A. Michael Miranda v. Commissioner.
Miranda v. Commissioner
Docket Nos. 2174-62, 1567-63.
United States Tax Court
T.C. Memo 1965-220; 1965 Tax Ct. Memo LEXIS 108; 24 T.C.M. (CCH) 1126; T.C.M. (RIA) 65220; August 13, 1965
*108 Held, petitioner has failed to prove: 1. That a true partnership, recognizable for tax purposes, existed between petitioner and his cousin, and 2. That respondent erred in disallowing certain claimed deductions for business entertainment and gratuities. Business income distributable to petitioner's cousin as an alleged partner in petitioner's insurance brokerage business was actually income of petitioner. Joseph Steinberg, 342 Madison Ave., New York, N. Y., and Donald Steinberg, for the petitioner. Lionel Savadove, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined deficiencies in the income tax of A. Michael Miranda, for the calendar years 1958, 1959, and 1960 in the respective amounts of $1,226.28, $1,152 and $4,549.84. Docket No. 2174-62, involving *109 the year 1958, and Docket No. 1567-63, involving the years 1959 and 1960 were consolidated for trial, briefing and opinion. After various concessions by both parties the only remaining issues for decision are: 1. Whether petitioner's alleged partnership with his cousin was in fact a partnership recognizable for tax purposes, or whether all of the income of the business is taxable to petitioner; 2. Whether petitioner has adequately substantiated certain deductions for business entertainment and gratuities. Findings of Fact The Stipulation of Facts and exhibits attached thereto are incorporated herein by this reference. Petitioner, a resident of the New York City area, filed his 1958, 1959 and 1960 Federal income tax returns with the district director of internal revenue, either for the Manhattan District or for Brooklyn, New York. His returns all show 565 Fifth Avenue, New York, New York, as his home address. In the year 1955 petitioner commenced business as an insurance broker, operating as a sole proprietorship. In that year he became licensed to sell all types of insurance; however, after starting in business he found himself devoting most of his time to the group insurance *110 field. The majority of his group insurance clients were labor management trust funds. Vincent Miranda (hereinafter sometimes referred to as "Vincent") is a cousin of petitioner, A. Michael Miranda. Vincent is a graduate of American International College; he also attended Pohs Institute of Insurance and worked for about one year in the group insurance department of Mutual of Omaha. During the years here at issue and beginning some time prior thereto Vincent worked part time for a union local doing occasional minor clerical work and running errands. He also worked part time for a banana company at the piers, weighing truckloads and making out necessary documents. For the years 1956 (May 1 - December 31) and 1957 partnership income tax returns, Form 1065, were filed in the name of A. Michael Miranda Associates. These returns reported the net income of the insurance brokerage business which had in previous years been reported as sole proprietorship income in the returns of petitioner, and they indicated that petitioner and Vincent Miranda were partners. For the years 1958, 1959 and 1960 this same alleged partnership filed partnership returns under the name of Rexon Associates, 565 *111 Fifth Avenue, New York, New York. The 1958, 1959 and 1960 partnership returns were signed by petitioner alone. We shall hereinafter sometimes refer to these two alleged partnerships as Associates. Annual insurance broker's licenses were issued for each of the years ended October 31, 1958, 1959, 1960 and 1961 to both petitioner and Vincent Miranda, individually. In addition, Rexon Associates was issued a partnership insurance broker's license for each of the years ended October 31, 1959, 1960 and 1961. These partnership licenses contain a space for the listing of "sublicensees authorized to act under" the partnership license. All three list the name of A. Michael Miranda, but not Vincent Miranda, in this space. In August, 1958, petitioner and Vincent executed and filed with the County Clerk of New York County a document certifying "that they are conducting or transacting business as members of a partnership under the name or designation of Rexon Associates." There was never any written partnership agreement executed by petitioner and Vincent. During each of the years here in question a bank account was maintained in the name of Rexon Associates. Both petitioner and Vincent were *112 authorized to draw checks on this account. Vincent signed one partnership check in each of the years 1958, 1959 and 1960. Each of these checks was issued to pay for the individual New York State insurance broker's license of Vincent for each year. The following table shows the accounting for income and capital accounts as reported in the partnership returns of Associates: Distribution
of Income
Total
Year
Net Income
Petitioner
Vincent
1956 *
$ 3,305.30
$ 3,305.30
1957
18,251.86
14,125.93
$4,125.93
1958
$ 7,813.53
$ 7,813.53
1959
9,930.97
9,930.97
1960
20,509.33
15,254.67
$5,254.66
Year-end-Capital
Drawings
Balances
Year
Petitioner
Vincent
Petitioner
Vincent
1956 *
$ 2,656.15
[2,193.17) **
1957
6,404.80
$569.60
5,527.96
$3,556.33
1958
$13,632.95
$569.60
[ 291.46)
$2,986.73
1959
13,819.05
(4,179.54)
2,986.73
1960
17,882.64
(6,807.51)
8,241.39
*113 The allocation of total income between petitioner and Vincent, as shown in the above table, was made by crediting the first $10,000 of income in each year to petitioner and then splitting any income over $10,000 in any year 50 percent each to petitioner and Vincent. Every year, beginning with 1956, petitioner would report in his individual income tax return, partnership income in the amount allocated to him in the partnership tax return. He reported no other income from the insurance brokerage business. Similarly, Vincent reporied in his individual returns, filed jointly with his wife, the income allocated to him on the partnership returns of Associates for the years 1957 and 1960. The amounts of $569.60 in each of the years 1957 and 1958 were, as indicated in the above table, the only withdrawals made by or charged to Vincent in the accounts of the partnership through the year 1960. These amounts were used to pay the increased individual income tax of Vincent which resulted from the inclusion in his income of a portion of the insurance brokerage income reported in the partnership returns. The total of individual income tax each year due respondent would have been substantially *114 greater if all of the income of Associates had been reported by petitioner. Vincent contributed no capital to the partnership and in the years before us performed at most minor services which took about 3 or 4 hours a week of his time. He performed only such duties as petitioner requested of him on specific matters. Petitioner managed and operated the business otherwise himself. In his notices of deficiencies respondent determined that Rexon Associates was a proprietorship and not a partnership and that the entire net income of Rexon Associates, as adjusted, was actually income of petitioner. A deduction for entertainment expenses was claimed in the partnership returns. Approximately once each week during the years in question petitioner would issue a Rexon Associates check to cash and record on the corresponding check stub the amount of the check plus a breakdown of this total among three to five categories of business expenses (e.g., "entertainment of clients, auto expense, cabs and car fare, stenographer's fee, office supplies," etc.). Petitioner did not record the recipient, the place or the purpose of any of the "entertainment" entered on the check stubs. Gifts and gratuities *115 were also claimed in the partnership returns. The respondent's deficiency notices disallowed the amounts claimed for entertainment, gifts and gratuities, as follows: 1958
$3,018.00
1959
3,020.56
1960
2,571.15
During 1959 petitioner purchased a gift at a cost of $34.50 for one of his insurance clients, which was paid for by Rexon Associates. Finding of Ultimate Fact A. Michael Miranda and his cousin, Vincent Miranda, did not form or intend to form a bona fide partnership to operate an insurance business prior to or during 1958, 1959 and 1960. Petitioner was not engaged in a true partnership within the meaning of the Federal revenue laws with Vincent Miranda during any of the years here in question. Opinion It is petitioner's contention that beginning as of May 1, 1956, Vincent Miranda became a partner with him in the insurance brokerage business theretofore operated by petitioner as a sole proprietorship. Pursuant to the alleged arrangement, partnership income tax returns were filed for each of the years 1956 (for the partial year beginning May 1) through 1960, in which Vincent was credited with income of $4,125.93 in 1957 and $5,254.66 in 1960. Respondent *116 asserts that there never was in fact a real partnership cognizable for tax purposes, and that the partnership tax returns and allocations of income therein were merely bookkeeping devices whereby a portion of petitioner's income could be reported as income of his cousin, Vincent, thereby reducing petitioner's tax. The issue, therefore, is purely the factual one whether or not a partnership actually existed in the years 1958 through 1960. Petitioner bears the burden of proof and it is clear to us that he has woefully failed to carry that burden. In fact, such evidence as we have in this case tends very much to indicate that respondent has correctly analyzed the situation. Petitioner contends that he found the paperwork involved in his insurance business, especially that involving group insurance plans, was not to his liking and was encroaching on the time he could otherwise be using in soliciting new business, and that he therefore decided to invite his cousin, Vincent, whom he trusted and who had some insurance training, to become a partner and assume the paperwork duties. It is alleged that an oral partnership agreement was reached under which petitioner would get the first $10,000 *117 of profits in each year and any excess would be divided equally. No written partnership agreement was executed. Though "Cinderella" may have joined in the partnership of matrimony with the handsome prince as a result of a chain of events which began with wishing it were so, we cannot in this case recognize a partnership relationship merely because petitioner wishes us to and says it is so. We do not mean to say that an oral partnership is never effective for tax purposes. We think, simply, that on the facts of this case, even if there was some kind of oral arrangement between petitioner and Vincent, it was so loose and indefinite that it cannot be regarded as an effective tax-recognizable partnership. It was apparent from the testimony of Vincent that no agreement had even been reached as to the allocation of possible partnership losses between the two alleged partners. At most, nothing more was agreed than that Vincent would perform minor part-time services and would receive one-half of all annual income in excess of $10,000. This does not constitute a partnership between petitioner and Vincent. See Collamer v. Commissioner, 185 F. 2d 146 (C.A. 4, 1950), affirming *118 a Memorandum Opinion of this Court. Petitioner contends that Vincent actually performed valuable services for Associates by taking over all the office paperwork. This allegation is supported only in part by the unsubstantiated and somewhat vague and general testimony of petitioner and Vincent. Petitioner might have produced in evidence written samples of Vincent's work, but he failed to do so. The evidence showing the type of work performed by Vincent in his other part-time jobs and during his one year with Mutual of Omaha tends to indicate that services performed for the partnership, if any, were not of a highly skilled nature. Davis v. United States, 176 F. 2d 651 (C.A. 6, 1949). Vincent testified that he worked about three or four hours a week on "the paper work on analysis and computation of group plans." Petitioner's own witness, an insurance broker, testified on crossexamination that petitioner could easily have performed the work allegedly done by Vincent if petitioner had the time for it. Petitioner points to the fact that Vincent was authorized to issue Rexon Associates checks as evidence that Vincent was a partner in Rexon. However, it was stipulated that *119 the only Rexon checks signed by Vincent during the years in question were one each year, issued to pay for the individual insurance broker's licenses of Vincent. On August 25, 1958, over two years and three months after the alleged date of formation of the partnership, petitioner and Vincent filed with the county clerk a "Business Certificate for Partners." Such a document does not in and of itself create a partnership recognizable for tax purposes, absent other indicia of the intent of the parties to be true partners and an ecomonic reality to the alleged arrangement. Frank Boylin, 14 T.C. 542 (1950) and cases cited therein at page 546. We agree with petitioner that the filing of such a document for public record along with other actions taken which tend to indicate a partnership (e.g., joint bank account; filing partnership returns) constitute such a holding oneself out as a partner as might well create an equitable partnership under state law for certain purposes. Thus, for example, a third party dealing with Vincent and relying on the purported partnership with petitioner would very likely have a right of action against petitioner as a partner. However that may *120 be, such equitable doctrines of co-partners' liability do not control the question whether or not a true partnership exists for tax purposes. Commissioner v. Tower, 327 U.S. 280 (1946). Finally, an analysis of the reported capital accounts cast strong suspicion on the alleged partnership arrangement. Despite the fact that Vincent's capital account was credited with income of $4,125.93 for 1957 and $5,254.66 for 1960, his only withdrawals made prior to the end of 1960 totaled $1,139.20. These were made to pay the additional individual income taxes which Vincent owed as a result of the inclusion in his individual income tax returns of a portion of the income of the alleged partnership. On the other hand, petitioner's capital account showed a deficit in each of the years 1956, 1958, 1959, and 1960. In each of the years 1958 through 1960 petitioner withdrew more from the business than the income credited to his capital account for each of those years. Thus, in effect, petitioner was drawing at will against the capital credited on the books to Vincent's capital account, while Vincent was making no withdrawals whatsoever except such amount as was needed to pay his income *121 taxes on partnership income allocated to him. This state of affairs strongly suggests that the allocations of portions of this income to Vincent were merely bookkeeping entries, that petitioner actually earned and owned all of the Rexon income, and that Vincent was merely being used as a "straw" partner, with petitioner paying the costs which would accrue to Vincent as a result of his acting the role of partner (e.g., the costs of insurance broker's licenses and the added income tax to Vincent). When asked why he did not withdraw his alleged share of Rexon earnings, Vincent testified that the money was needed as working capital in the business. However, his explanation then made it clear that it was the personal need of petitioner for living expenses which occasioned the drain-off of these funds by petitioner. It is apparent that these funds were not needed or used as capital by the business but instead were withdrawn and used by petitioner as his own. Applying the tests set forth in Commissioner v. Culbertson, 337 U.S. 733 (1949), to determine whether the alleged partnership here is real within the meaning of the Federal revenue laws, we can only conclude on the *122 evidence before us that Michael and Vincent did not in good faith and acting with a business purpose intend to join together in a partnership prior to or during the years before us to conduct what had formerly been Michael's sole proprietorship insurance business. The respondent's determination that the business income of Rexon Associates was taxable to petitioner in the years involved is accordingly sustained. A second issue in this case is respondent's disallowance of deductions claimed by Associates for business entertainment and gratuities. Expenses such as these are allowable deductions if they are "ordinary and necessary" in the conduct of a business of profession, section 162, Internal Revenue Code of 1954, and whether they are turns on the facts of each case. Louis Boehm, 35 B.T.A. 1106, 1109 (1937); see Commissioner v. Heininger, 320 U.S. 467 (1944). The taxpayer must show that the sums were spent for a business purpose rather than for personal reasons and that the business or profession in which the taxpayer is engaged was directly *123 benefitted or was intended to be directly benefitted thereby. Louis Boehm, supra; James Schulz, 16 T.C. 401 (1951), acq. 1951-2 C.B. 4. Petitioner testified that he often entertained and purchased gifts for customers and prospective customers. He introduced into evidence check stubs dated at approximately one-week intervals. These stubs listed various expenditures and showed a total, which total was alleged to be the amount of the check issued on the date of the stub. Petitioner testified that he paid day-to-day business expenses, including entertainment, in cash, then at the end of the week he would write a check to cash to reimburse himself. The stubs introduced into evidence were alleged to be the stubs from these checks. Neither the checks themselves nor any receipts or invoices were produced at trial. Petitioner stated that he jotted down cash business expenditures on a slip of paper as they were incurred, and then determined the amount of the weekly "reimbursement" check from these slips. Apparently, petitioner never saw fit to save these slips, nor to record on the check stubs or anywhere else the names of persons entertained, *124 or the nature or purpose of the entertainment. While adequate substantiation in a case such as this does not require a receipt for each expenditure, at a minimum there should be some record or evidence of the person entertained, the business relationship and/or the purpose of the entertainment. Rushing v. Commissioner, 214 F. 2d 383 (C.A. 5, 1954), affirming a Memorandum Opinion of this Court. We could not in fairness to the nation's fisc hold that the checks made out to cash and paid to petitioner represented deductible business expenses merely because the check stubs indicate "entertainment" without indicating the purpose, place or recipient of the alleged expenditure. Compare James Schulz, supra, in which informal notations indicating recipients and/or place of entertainment were sufficient to permit deduction of a portion of the amounts claimed. Even petitioner's own testimony is too vague and inexact to support a conclusion that this entertainment was for a business purpose. We are confronted with a similar absence of proof as far as the alleged business gifts *125 and gratuities are concerned. Petitioner has introduced into evidence several canceled checks made payable to various business establishments. Some of them have notations which are alleged to be the serial numbers of gift certificates which were purchased with the checks. Here again there is no indication of who the recipients of the gifts were and what the business connection was. For all that this record shows, the purchases could all have been for petitioner's personal use; the gift certificates could have been given to personal friends and relatives. Petitioner was asked at trial to state to whom the gifts were made and to explain the business relationship. He claimed to be unable to do so because of failure of memory. This failure results in a failure of his proof. There is but one exception to the abovedescribed failure of proof. Petitioner produced a 1959 receipt for a gift basket of fruit which indicated the name of the recipient, an individual who petitioner testified was a client. This is in the amount of $34.50, and a partnership check in this amount was issued to cash two days later. With the exception of $34.50 substantiated for the year 1959, we sustain respondent's *126 disallowance of claimed entertainment, gift and gratuity expenses for each of the years in question for lack of substantiation and lack of proof that such claimed amounts constituted ordinary and necessary business expenses under section 162, Internal Revenue Code of 1954. To reflect the above and certain concessions made by both parties, Decisions will be entered under Rule 50. Footnotes
*. Covers only the period May 1 through December 31, 1956. ↩
**. All figures shown in parentheses represent negative, or deficit, balances. The first partnership return (1956) shows a negative opening balance in petitioner's capital account of $2,842.32. Petitioner explained that this resulted from a carry-over of an alleged negative balance in his sole proprietorship capital account.↩